**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Maurice A. Belmore, Jr.

  v.             Civil No. 17-cv-307-JD

Nashua Police Department, Ryan McDermott,
Steven Berry, Dennis Pereira, Jason Reinold,
and Daniel Mederos[1]

**REPORT AND RECOMMENDATION**

  Before the court is the complaint (Doc. No. 1), filed by pro se plaintiff Maurice A. Belmore, Jr., while he was an inmate at the Hillsborough County Department of Corrections. The complaint caption names the Nashua Police Department ("NPD") as a defendant, and the complaint narrative names individual defendants. The matter is here for preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a).

---

[1] Belmore has named the Nashua Police Department ("NPD") as a defendant. The court construes the complaint to state claims against individual NPD Officers Ryan McDermott, Steven Berry, Dennis Pereira, Jason Reinold, Sgt. Daniel Mederos, and other unnamed officers. The court has issued an Order directing service upon the named defendants on this date.

**Preliminary Review Standard**

The court may dismiss claims asserted in an inmate's complaint, if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court treats as true all well-pleaded factual allegations, and construes reasonable inferences in plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

**Background**

Belmore alleges that on July 12, 2014, at 1:30 a.m., he was walking across East Hollis Street in Nashua, New Hampshire, when an NPD police cruiser struck him and did not stop, injuring his knee.  Belmore alleges that NPD Officers Steven Berry, Dennis Pereira, Jason Reinold, and Sgt. Daniel Mederos appeared on the

scene and interviewed witnesses.  No accident report was filed.

Belmore alleges that, when NPD Officer Ryan McDermott arrived, McDermott pushed Belmore from a sitting position to the ground, pinning him there with his knee against Belmore's throat, and threatening an arrest if Belmore continued to say he had been hit by a car.  Belmore alleges that McDermott waved off EMTs in the area.  Belmore alleges McDermott then told Belmore to get up or he would be maced, and threatened Belmore again with an arrest to make Belmore stop saying he had been hit by a car.  Belmore alleges McDermott then handcuffed him, folding Belmore's thumb backwards and twisting his arm while doing so.  Belmore alleges McDermott and/or NPD Officers Berry, Pereira, and Reinold punched and delivered knee strikes to Belmore's torso, and then carried him facedown by his wrists and ankles, towards a cruiser.  Belmore alleges that Sgt. Mederos, their supervisor, watched without stopping the assault.

Belmore alleges that after his arrival at the NPD station on July 12, 2014, NPD officers assaulted him in an incident that was recorded on a surveillance video.  Belmore received treatment for a sprained left knee and bruised ribs after these incidents.

On July 14, 2014, Belmore pleaded not guilty to five

misdemeanor charges: disorderly conduct, resisting arrest, criminal trespass, and two charges of simple assault. The case was prosecuted by a police prosecutor in the New Hampshire Circuit Court, 9th Circuit, District Division, Nashua ("Nashua District Court"). Belmore, who was represented by appointed counsel in those proceedings, pleaded not guilty and was released on personal recognizance. After a trial, the Nashua District Court found Belmore not guilty of resisting arrest and guilty of the remaining charges, and sentenced him to sixty days on each charge.

Belmore spent several months in jail serving the Nashua District Court sentence before the matter was transferred to Hillsborough County Superior Court, Southern District. On October 29, 2015, a jury found Belmore guilty of criminal trespass and not guilty of the remaining charges. The Superior Court sentenced Belmore to sixty days on that conviction and granted him credit for sixty days time served. The New Hampshire Supreme Court ("NHSC") affirmed Belmore's conviction. See State v. Belmore, No. 2015-0751, 2016 N.H. LEXIS 262, 2016 WL 7451408 (N.H. Nov. 14, 2016).

Belmore seeks damages and an order setting aside his criminal trespass conviction, based upon the following claims,

4

asserted under 42 U.S.C. § 1983 and state tort law:

1.   NPD Officers Ryan McDermott, Steven Berry, Dennis Pereira, and/or Jason Reinold violated Belmore's Fourth Amendment rights by using unreasonable and excessive force July 12, 2014, in that:

   a.   McDermott pinned Belmore to the ground with his knee against Belmore's throat;

   b.   McDermott bent back Belmore's thumb and twisted his arm while handcuffing him;

   c.   McDermott, Berry, Pereira, and/or Reinold punched Belmore and delivered knee strikes to his torso; and

   d.   McDermott, Berry, Pereira, and/or Reinold carried Belmore facedown by his wrists and ankles to an NPD cruiser.

2.   NPD Officer Ryan McDermott retaliated against Belmore for exercising his First Amendment rights, by arresting him on July 12, 2014, for saying he had been struck by a car.

3.   NPD Sgt. Daniel Mederos, a supervisory officer, and NPD Officers Berry, Pereira, and/or Reinold violated Belmore's Fourth Amendment rights, in that those officers witnessed but failed to intervene to stop the other NPD officers from using unreasonable and excessive force in arresting, handcuffing, and assaulting Belmore on July 12, 2014.

4.   Unnamed NPD officers used unreasonable and excessive force in an assault occurring at the NPD station on July 12, 2014, in violation of:

   a.   Belmore's Fourth Amendment rights; and

   b.   The state common law tort of battery.

5.   NPD Officer McDermott threatened Belmore with mace, and McDermott, Berry, Pereira, and/or Reinold punched and delivered knee strikes to Belmore's torso, in the manner

5

summarized in Claims 1 and 2, giving rise to the officers' liability for the intentional torts of assault and battery under New Hampshire law.

6. The NPD, an agency of the City of Nashua, is vicariously liable, under state common law, for:

   a. NPD Officers Berry's, Pereira's, Reinold's, and McDermott's intentional assault and battery of Belmore, summarized in Claim 5, and

   b. The unnamed NPD officers' battery of Belmore at the NPD station on July 12, 2014, summarized in Claim 4(b).

7. Belmore was falsely arrested and falsely imprisoned by NPD officers, without probable cause, in violation of his rights under the Fourth Amendment, and giving rise to liability under state tort law.

8. Belmore was subjected to a malicious prosecution of charges including disorderly conduct, resisting arrest, and simple assault, unsupported by probable cause:

   a. In violation of Belmore's Fourth Amendment rights, rendering McDermott liable under 42 U.S.C. § 1983; and

   b. In a manner constituting an intentional tort:

      i. Rendering McDermott liable under state common law, and

      ii. Rendering the NPD vicariously liable for McDermott's conduct under state tort law.

9. Belmore was subjected to a malicious prosecution of charges including criminal trespass, unsupported by probable cause: (a) in violation of Belmore's Fourth Amendment rights; and (b) in a manner constituting an intentional tort.

**Discussion**

I. **False Arrest, False Imprisonment, and Malicious Prosecution**

    A.   False Arrest and False Imprisonment (Claim 7)

Belmore asserts Fourth Amendment false arrest and false imprisonment claims under 42 U.S.C. § 1983. In general, an arrest is lawful if the police officer has probable cause. See Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009). "Although 'a lack of probable cause is not an element of false imprisonment'" under state common law, "probable cause is 'a defense to a [tort] claim for false imprisonment resulting from a warrantless detention.'" Farrelly v. City of Concord, 168 N.H. 430, 445, 130 A.3d 548, 560 (2015).

Stripped of legal conclusions about false arrest and false imprisonment, the facts alleged in the complaint fail to state a claim that officers who arrested and prosecuted Belmore for criminal trespass lacked probable cause to do so.

> [N.H. Rev. Stat. Ann. ("RSA")] 635:2 (2016) provides that: "A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place." Criminal trespass constitutes a misdemeanor offense if "[t]he person knowingly . . . remains . . . [i]n any place in defiance of an order to leave . . . which was personally communicated to him by the owner or other authorized person." RSA 635:2, III(b)(2).

Belmore, 2016 WL 7451408, at *1, 2016 N.H. LEXIS 262, at *1.

7

The jury that considered the evidence on Belmore's criminal trespass charge found him guilty of that charge, based on evidence that a bar owner and a police officer summoned to the scene both ordered Belmore to leave. Cf. id., 2016 WL 7451408, at *1-*2, 2016 N.H. LEXIS 262, at *3-*4 (failure to dismiss criminal trespass charge for lack of evidence was not plain error). Belmore's criminal trespass conviction was affirmed. See id. Belmore is collaterally estopped from challenging the sufficiency of the evidence to support that conviction in this case, and, in light of the trial court's finding that a police officer ordered Belmore to leave, Belmore is effectively collaterally estopped from litigating here whether the officer who ordered Belmore to leave had probable cause for an arrest when he did not comply with that order. Accordingly, the district judge should dismiss Claim 7.

B.   Malicious Prosecution (Claims 8 and 9)

Belmore has asserted malicious prosecution claims, Claims 8 and 9. Belmore specifically requests that the court issue an order invalidating his criminal trespass conviction for criminal trespass, and he seeks damages for his prosecution arising out of the events of July 12, 2014. "[A] plaintiff may bring a suit under § 1983 . . . [for a Fourth Amendment malicious prosecution

claim] if he can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted).  Similarly, under state law, the elements of malicious prosecution are: "(1) the plaintiff was subjected to a criminal prosecution . . . instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor."  Farrelly, 168 N.H. at 445, 130 A.3d at 560.

### 1. Criminal Trespass Prosecution (Claim 9)

The criminal trespass prosecution did not terminate in Belmore's favor, and that conviction has not been invalidated. See generally Heck v. Humphrey, 512 U.S. 477, 487 (1994) (courts must dismiss § 1983 claims if judgment in plaintiff's favor would necessarily imply invalidity of conviction or sentence that has not been previously invalidated).  Accordingly, Claim 9 should be dismissed.

### 2. Acquitted Charges (Claim 8)

Belmore alleges that his prosecution on the remaining charges of resisting arrest, simple assault, and disorderly conduct was maliciously motivated and unsupported by probable

9

cause.  Belmore was found not guilty of each of those charges.

Without prejudice to defendants' ability to move to dismiss upon any valid basis, as it relates to those acquitted charges, in the Order issued this date, the court has directed service of Claims 8(a) and 8(b)(i) on the arresting officer, NPD Officer McDermott, and has directed service of Claim 8(b)(ii) on the NPD under a theory of respondent superior.  To the extent that a Fourth Amendment malicious prosecution claim is asserted against the NPD, that claim should be dismissed as nothing in the complaint suggests that a municipal policy or custom caused the unconstitutional conduct at issue.  See Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011).

## II.  First Amendment Retaliation Claim (Claim 2)

Construed liberally, the complaint alleges that NPD Officer McDermott arrested Belmore, in retaliation for Belmore saying that he had been struck by a police car.  Belmore names the NPD as a defendant to this claim, numbered above as Claim 2, although Belmore has not pleaded any facts suggesting that any NPD policy or custom resulted in a retaliatory arrest.  See Haley, 657 F.3d at 51.  Accordingly, the district judge should drop the NPD as a Claim 2 defendant.

"Qualified immunity protects public officials from § 1983

suits for damages if their actions 'd[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ciolino v. Gikas, 861 F.3d 296, 302 (1st Cir. 2017).  The defense of qualified immunity provides grounds for the district judge to dismiss Claim 2 to the extent it is asserted against any NPD officers. Cf. Chavez v. Robinson, 817 F.3d 1162, 1169 (9th Cir. 2016) ("district court may dismiss a claim on qualified immunity grounds under 28 U.S.C. § 1915(e)(2)(B)(iii), but only if it is clear from the complaint that the plaintiff can present no evidence that could overcome a defense of qualified immunity").

"Whether the law was clearly established is . . . a question of law for the court." Stamps v. Town of Framingham, 813 F.3d 27, 39 (1st Cir. 2016).  Neither the Supreme Court, nor the First Circuit, has issued any ruling indicating that an officer may be held liable for a retaliatory arrest that is supported by probable cause, see Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (Supreme Court has never recognized that there is a First Amendment right not be subjected to a retaliatory arrest, if the arrest is supported by probable cause); see also Cabot v. Lewis, 241 F. Supp. 3d 239, 255-56 (D. Mass. 2017), and there has been a split in the

Circuits regarding whether such a right exists. See Cabot, 241 F. Supp. 3d at 256. Therefore, it was not clearly established in Nashua in 2014 that subjecting a plaintiff to a criminal trespass arrest supported by probable cause was unlawful, if that arrest was also undertaken in retaliation for protected speech. Accordingly, the individual officers who arrested Belmore are entitled to qualified immunity as a matter of law, and for that reason, Claim 2 should be dismissed.

### III. July 12, 2014 Assaults

   A.   Fourth Amendment Excessive Force (Claims 1, 3, 4(a))

"The Fourth Amendment prohibits 'unreasonable searches and seizures.'" Cty. of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017).

> [Fourth Amendment] "[e]xcessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." That inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim.

Id. at 1546-47 (citations omitted). A "bystander-officer who has a realistic opportunity to prevent the use of excessive force by a fellow [police] officer [in violation of plaintiff's Fourth Amendment rights] may in certain circumstances be held liable for a failure to intervene." Calvi v. Knox Cnty., 470

F.3d 422, 428 n.3 (1st Cir. 2006).

### 1.   Officers on East Hollis Street (Claims 1 and 3)

Construed liberally, the complaint, summarized in pertinent part in Claim 1, asserts that NPD Officers Ryan McDermott, Steven Berry, Dennis Pereira, and/or Jason Reinold used unreasonable force in arresting, handcuffing, striking, and putting Belmore into a cruiser.  Claim 3, numbered above, summarizes Belmore's allegations that supervisory officer Sgt. Daniel Mederos and fellow NPD Officers Berry, Pereira, and/or Reinold witnessed the uses of force by other officers and despite having a realistic opportunity to intervene, did not do so, in violation of Belmore's Fourth Amendment rights.  The court has directed service of Claims 1 and 3 against each of the named NPD officers, in the Order issued this date.

### 2.   Officers at NPD Station (Claim 4(a))

Belmore's allegations concerning the assault at the NPD station appear to state a claim of a violation of Belmore's Fourth Amendment rights.  Belmore, however, has not provided this court with the name of any officer involved in that beating, and he has not described what each officer did.  The court therefore declines to order service of Claim 4(a), arising out of that incident, at this time, pending receipt of Belmore's

13

response to the Order issued this date.  In that Order, the court directs Belmore to name the officers who assaulted him at the NPD station on July 12, 2014, and to describe their conduct; or to file either a statement saying why he cannot name them and describe their conduct, or a motion to extend time for doing so.

### 3. Municipal Liability under § 1983 for Assaults

Belmore names the NPD as a defendant to his Fourth Amendment claims relating to the assaults on East Hollis Street and at the NPD station.  Belmore has failed to plead facts, however, to state a claim that the assaults occurred because of any municipal policy or custom.  Cf. Haley, 657 F.3d at 51.  Accordingly, the district judge should dismiss the Fourth Amendment claims against the NPD relating to the assaults that are alleged to have occurred on East Hollis Street and at the NPD station on July 12, 2014.

### B. Tort Claims of Assault and Battery (Claims 4(b), 5, 6)

Construed liberally, the complaint asserts claims arising under state tort law, alleging that NPD Officers Ryan McDermott, Steven Berry, Dennis Pereira, and Jason Reinold used and threatened to use unreasonable force in arresting, handcuffing, and putting Belmore into a cruiser; and that unnamed NPD officers at the NPD station struck Belmore in an incident

recorded on a surveillance video, rendering those officers (Claims 4(b) and 5) and their employer, upon a theory of respondeat superior (Claims 6(a) and 6(b)), liable for damages. In the Order this date, the court has directed service of those tort claims upon McDermott, Berry, Pereira, and Reinold (Claim 5) and upon the NPD (Claims 6(a) and 6(b)). The Order also grants Belmore leave within thirty days to identify the officers who struck him at the NPD station on July 12, 2014 (Claim 4(b)), and to describe their conduct; or, in the alternative, either to state why Belmore cannot name those defendants or describe their conduct, or to seek an extension of the thirty-day deadline.

## Conclusion

For reasons stated herein, the district judge should dismiss all of the federal constitutional claims asserted against the NPD, and should dismiss all of Belmore's false arrest and false imprisonment claims (Claim 7), the malicious prosecution claim relating to the criminal trespass charge (Claim 9), and the First Amendment retaliatory arrest claim (Claim 2). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen day period may be

extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea Johnstone
United States Magistrate Judge

October 12, 2017

cc:  Maurice A. Belmore, Jr., pro se